IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-00068-GPG

EVELIN ADELA PERUCH-VICENTE,

    Applicant,

v.

JOHN LONGSHORE,
UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT ("ICE"),

    Respondents.

ORDER OF DISMISSAL

Applicant, Evelin Adela Peruch-Vincente, initiated this action on January 12, 2015 by filing, *pro se*, an Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. 2241. She paid the $5.00 filing fee. Attorney, Jim Salvatore, who assisted the Applicant in preparing the Application, entered his appearance on behalf of the Applicant on March 25, 2015 (ECF No. 21). Mr Salvatore thereafter filed a Motion to Withdraw[1] on May 15, 2015 (ECF No. 27), which was granted by the Court in an order dated May 18, 2015 (ECF No. 28).

**I. Procedural Background**

Pursuant to an order issued by Magistrate Judge Gordon P. Gallagher (ECF No. 8), Respondent Longshore filed a Preliminary Response to the Application on March 4, 2015 (ECF No. 14), addressing the applicability of the affirmative defense of exhaustion of administrative remedies. Applicant, through counsel, filed a Reply on March 29,

---

[1] Mr. Salvatore was placed on disability/inactive status on May 4, 2015. *See* Civil Action No. 15-cv-00217-GPG, Doc. # 10 (Order to Show Cause).

2015.  (ECF Nos. 22, 23).

On April 7, 2015, the Court entered an Order to Dismiss in Part and Directing Application to File an Amended Application.  (ECF No. 25).  In the April 7 Order, the Court found that Applicant satisfied the "in custody" requirement because she is subject to a reinstated order of removal.  *See Aguilera v. Kirkpatrick*, 241 F.3d 1286, 1291 (10th Cir. 2001) ("Although the petitioners in this case are not being 'detained,' they are 'in custody' for habeas purposes because they are subject to final deportation orders"). The Court further found that Applicant was not required to exhaust administrative remedies before seeking relief under 28 U.S.C. § 2241 because no remedies were available.  The Court dismissed Applicant's allegations concerning the legality of her reinstated removal order for lack of subject matter jurisdiction. *See* 8 U.S.C. § 1252(a)(5). The Court further found that Applicant's allegations asserting that ICE/BI, Inc. agents threatened to lock her up and take away her child, which, according to Applicant, contravene the UN Declaration on Rights of Indigenous People, the UN Convention Against Torture, and the United States Indian Child Welfare Act, were not cognizable under § 2241.  And, finally, the Court observed that Applicant's constitutional claims challenging the requirements of her order of supervision appeared to lack merit; however, because Applicant filed the § 2241 Application *pro se*, the Court afforded her an opportunity to file an Amended Application to state an arguable due process or equal protection claim.

Applicant, through counsel, filed an Amended Application on April 28, 2015. (ECF No. 26).

**II. The Amended Application**

Applicant alleges the following in the Amended Application. Applicant is a native of Guatemala, who does not speak English. She is subject to a final reinstated order of removal, dated August 7, 2014. (ECF No. 26, at 2, 6). Applicant applied for asylum in the United States on September 1, 2014. (*Id.* at 4).

Applicant was released from Immigration and Customs Enforcement (ICE) detention on August 8, 2014, under an order of supervision that requires her to remain within the jurisdiction of the Denver Field Office. (*Id.* at 3). On September 4, 2014, she was informed that her supervision would be handled by BI, Inc., a private entity that contracts with ICE, pursuant to the Intensive Supervision and Appearance Program (ISAP). (*Id.* at 5-6). Applicant is subject to the following requirements under the ISAP, :

- report to BI, Inc. every Wednesday at 2 p.m.;

- be available for home visits from 8:00 am -12:00 pm every Friday, and from 1:00-2:00 pm every Tuesday;

- be available for phone calls every Friday, between 8:00 - 10:00 a.m.; and

- provide a "contact" with a physical address and a mailing address who must be available on a weekly basis;

(*Id.* at 5).

Applicant alleges that she been required by BI, Inc. to sign documents that she cannot read, outside the presence of her attorney. (*Id.* at 6). Applicant's efforts to obtain an interpreter who speaks her language, through her supervising ICE Officer, have proved unavailing. (*Id.* at 7-8). When Applicant asked to be relieved of supervision under ISAP because the stringent requirements were preventing her from acquiring and maintaining a job, her ICE officer told her that there would be no changes to her

supervision until the asylum application was resolved.  (*Id.* at 8-9).

Applicant states that between November and January 2015, she made several requests to adjust her ISAP status, so that she could work full time.  (*Id.* at 9).  She alleges that her application for a work permit was granted by the United States Citizenship and Immigration Service several months ago, but her ability to work is significantly restrained by the reporting requirements in her order of supervision. (*Id.* at 4, 7).  At one point, she was told by an ICE officer that if she continued requesting adjustment of her ISAP, she "would be locked up and her child taken away."  (*Id.* at 9).  Applicant states that her high level of supervision under ISAP is not related to her individual circumstances because she has no history of flight; she has not committed a crime, but is instead a crime victim herself; she has a child born in the United States, and she has a pending I-589 application.  (*Id.* at 12).

Applicant alleges that her asylum application has been pending since September 1, 2014, but Respondent has thus far not arranged for Applicant's "reasonable fear" interview. [2] (*Id.* at 11).  She asserts that her interview has been delayed unreasonably because she requested an indigenous language interpreter.  (*Id.* at 11-12).  Applicant states that she is being "forced to manage all her interviews in Spanish [her second language], although the ICE personnel she has encountered . . . speak Spanish poorly, if at all."  (*Id.* at 12).

Applicant claims in the Amended Application that the conditions of her supervised release violate the Due Process Clause and the Equal Protection component of the Fifth

---

[2] *See* 8 C.F.R. § 208.31.

Amendment.  She also asserts an equal protection violation based on the Respondent's delay in processing her application for asylum.  For relief, Applicant seeks an order requiring ICE to adjust her supervision status so that she is allowed to report to Brush, Colorado, every three to four months, and that her asylum application be transferred to an Immigration Judge forthwith.

### III. Analysis

#### A.  Applicable statutes and regulations

Section § 1231(a), of Title 8 United States Code, states, in pertinent part:

> (5) Reinstatement of removal orders against aliens illegally reentering
> If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at any time after the reentry.

*See also* 8 C.F.R. § 241.8 (reinstatement of removal orders).

An alien subject to a final order of removal may be released, pending removal, on conditions set forth in regulations prescribed by the Attorney General.  *See Zadvydas v. Davis*, 533 U.S. 678, 695-96 (2001) (citing 8 U.S.C. § 1231(a)(3) and 8 C.F.R. § 241.5).  If an alien fails to comply with the conditions of release, he or she will be subject to criminal penalties, including detention.  *Id.*

As relevant here, the regulations require, *inter alia*, that the alien "appear before an immigration officer periodically for identification." *Kalombo v. Shanahan*, No. 07 Civ. 11350(PKC), 2009 WL 1788589, at *4 (S.D.N.Y. Jun. 23, 2009); see 8 C.F.R. § 241.5(a)(1) (providing that an order of supervision should include that "the alien report to a specified officer periodically and provide relevant information under oath as

directed"); *see also United States v. Witkovich*, 353 U.S. 194, 202 (1957) (finding that the Attorney General may require deportable aliens periodically to appear before the agency for identification purposes under Section 242 of the Immigration and Nationality Act, codified at 8 U.S.C. § 1231(a)(3)).

### B.  Due Process Claim

Applicant contends that the conditions of her order of supervision violate the Fifth Amendment Due Process Clause and are subject to strict scrutiny review because Applicant is "a member of a suspect class: an Indigenous woman who speaks an Indigenous dialect."  (ECF No. 26, at 15).

The Fifth Amendment protects aliens from deprivation of life, liberty or property without due process of law, even if their presence in this country is unlawful.  *See Mathews v. Diaz*, 426 U.S. 67, 77 (1976).  Notwithstanding, in exercising its broad power over naturalization and immigration matters, "Congress regularly makes rules that would be unacceptable if applied to citizens."  *Id.* at 79. *See also Zadvydas*, 533 U.S. at 695 ("[W]e nowhere deny the right of Congress to remove aliens, to subject them to supervision with conditions when released from detention, or to incarcerate them where appropriate for violations of those conditions.").

The Court rejects Applicant's invitation to apply strict scrutiny review to the conditions of her supervision.  The Supreme Court has held that the liberty interest of an alien under a final removal order is not a fundamental right. *Demore v. Kim*, 538 U.S. 510, 521 (2003).  Therefore, the restrictions placed on Applicant as conditions of her release need only be rationally related to a legitimate government interest.  *Id.* at 528.  *See also Reno v. Flores,* 507 U.S. 292, 305 (1993) ("[N]arrow tailoring is required only

when fundamental rights are involved."). Although courts in the Tenth Circuit have not addressed the specific issue, other district courts have held that a rational basis standard of review applies to an alien's petition challenging the conditions of an order of supervision. *See Yusov v. Shaughnessey,* 671 F.Supp.2d 523, 530 (S.D.N.Y. 2009); *Zavala v. Prendes,* No. 3-10-CV-1601-K-BD, 2010 WL 4454055, at *1 (N.D.Tex. Oct. 5, 2010) (same); *Nguyen v. B.I. Inc.*, 435 F.Supp.2d 1109, 1115 (D. Or. 2006).

To survive a rational basis review, there must be a reasonable fit between the governmental purpose and the means chosen to advance that purpose. *Reno*, 507 U.S. at 305. The burden is on the petitioner to show the governmental act complained of does not further a legitimate governmental purpose by rational means. *Seegmiller v. LaVerkin City*, 528 F.3d 762, 772 (10th Cir. 2008) (internal citation omitted). Courts have recognized that "[t]he goals of 'reducing the number of absconding aliens' and 'accounting for and being able to produce any alien who becomes removable' are legitimate government interests." *Yusov*, 671 F.Supp.2d at 530 (quoting *Nguyen*, 435 F.Supp.2d at 1115). *See also Diawara v. Secretary of DHS*, No. 04-1815-PA, 2010 WL 4225562, slip op. at *2 (D. Md. Oct. 25, 2010) (same).

Applicant attempts to distinguish *Yusov* and *Nguyen* on the basis that the petitioners in those cases were criminal aliens, while she has not been convicted of any crime. (ECF No. 26, at 23). However, due process does not require the government to employ the least restrictive means of assuring petitioner's appearance and the safety of the community, even where less burdensome conditions may achieve the same results. *See Denmore*, 538 U.S. at 528.

Moreover, the instant action is more factually similar to *Zavala*. Even though

there is nothing in the district court's order to suggest that *Zavala* was a criminal alien, the court found that requirements similar to those imposed on Applicant survived rational basis review. *See Zavala*, 2010 WL 4454055, at *2 (concluding that the following requirements of alien's order of supervision were reasonable and within the scope of 8 C.F.R. § 241.5, even though they interfered with his ability to work: (1) to report in person to the immigration office every Monday, and be at home afterward every Monday at 4:00 p.m. to meet with the case specialist; (2) to wear a leg monitor at all times; (3) to have quarterly meetings with the probation officer; and (4) to be at home by 8:00 p.m. every evening), *Report and Recommendation Adopted in* 2010 WL 4627736 (N.D.Tex. Nov. 1, 2010) (unpublished).

The Court agrees that Applicant's reporting requirements are constrictive. Nonetheless, the Court finds that there is a rational relationship between the conditions of her supervised release and the government's legitimate interests in reducing the number of absconding aliens and being able to account for aliens who are subject to a final removal order. Accordingly, the Fifth Amendment due process claim lacks arguable merit and will be dismissed.

### C. Equal Protection

Applicant asserts that her equal protection rights are being violated by the conditions of her order of supervision because "[p]ersons other than the [A]pplicant who are similarly situated to the Applicant have very different (and far less intensive) levels of supervision, such as Maria Velasquez-Mendoza (A094-937-421), who is not supervised by Roberto Cuellar." (ECF No. 26, at 12). According to Applicant, Ms. Velasquez-Mendoza is required simply to report to the ICE office in Brush, Colorado,

three to four times per month.  (*Id.* at 23).  Applicant suggests that she is being treated more onerously than Ms. Velasquez-Mendoza because she, unlike Ms. Velasquez-Mendoza, requested an Indigenous language interpreter for her interviews with ICE/BI, Inc.  (*Id.*).

The Fourteenth Amendment's equal-protection guarantee applies to the federal government through the Fifth Amendment's Due Process Clause.  *See Jurado–Gutierrez v. Greene*, 190 F.3d 1135, 1152 (10th Cir.1999) (citing *Schweiker v. Wilson*, 450 U.S. 221, 226 & n. 6 (1981)).  Aliens are entitled to equal protection of the laws.  *See Plyler v. Doe*, 457 U.S. 202, 210 (1982).  Equal protection principles require that "all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).  A "class of one" equal protection claimant, such as the Applicant, must show intentional treatment different from others similarly situated and lack of rational basis to explain difference in treatment.  *See Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *see also Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1216 (10th Cir. 2011) (recognizing that in a class-of-one equal protection claim, the "plaintiff must first establish that others, 'similarly situated in every material respect' were treated differently") (quoting *Jicarilla Apache Nation v. Rio Arriba Cnty.*, 440 F.3d 1202, 1210 (10th Cir. 2006)).  In a class-of-one equal protection case, "it is exceedingly difficult to demonstrate that any difference in treatment is not attributable to a quirk of the plaintiff or even to the fallibility of administrators whose inconsistency is as random as it is inevitable." *Jicarilla Apache Nation*, 440 F.3d at 1213.  Applicant must also establish that any difference in treatment was without rational basis, that is the government action was "irrational and abusive" and "wholly unrelated to any legitimate

[government] activity." *Kansas Penn Gaming*, 656 F.3d at 1217.  See also *Jurado-Gutierrez v. Greene,* 190 F.3d 1135, 1152 (10th Cir.1999) (stating that in the immigration context, the "guarantee of equal protection" requires that similarly situated persons not be treated differently "unless the dissimilar treatment is rationally related to a legitimate legislative objective.")*.*

### 1.  terms of supervision order

Applicant alleges that she is being treated differently in the terms and conditions of her supervised release than a similarly-situated removable alien, Ms. Velasquez-Mendoza.  However, Applicant also alleges that she and Ms. Velasquez-Mendoza are supervised by different individuals at ICE/BI, Inc.

In the Title VII context, the courts have recognized that "differences in treatment by different supervisors or decision makers can seldom be the basis for a viable claim of discrimination" because "different supervisors may employ different disciplinary measures." *Silvera v. Orange Cnty. Sch. Bd.*, 244 F.3d 1253, 1261 n. 5 (11th Cir. 2001). *See also Lee v. Kansas City South Ry. Co.*, 574 F.3d 253, 259-60 (5th Cir. 2009) (stating that employees who have different supervisors "generally will not be deemed similarly situated").  Likewise, in the immigration context, different supervisors may impose different conditions of supervised release on a removable alien.  Because Applicant and Ms. Velasquez-Mendoza are not supervised by the same individuals, they cannot be similarly situated in every material respect.  As such, Applicant has failed to state an arguable equal protection claim.  *See Shiffrin v. Toll*, 483 F. App'x 446, 450 (10th Cir. May 22, 2012) (unpublished) (affirming dismissal of equal protection claim where plaintiff identified certain persons as substantially similar to him simply

because they all were free of convictions from the past five years, but failed to account for all material characteristics); *see also Frazier v. Flores*, No. 14-cv-02600-GPG, 2014 WL 6517375, at *4 (D. Colo. Nov. 20, 2014) (dismissing prisoner's equal protection claim as legally frivolous where inmate failed to allege facts to show that the defendant prison officials who seized his personal property during a cell search were the same individuals who did not seize another inmate's personal property).

### 2.  delay in processing asylum application

Applicant contends that she has not been provided a "reasonable fear" interview in conjunction with her asylum application, filed on September 1, 2014, because of language barriers that Respondent has failed to remediate, and her impending due date from a difficult pregnancy, while other "[p]ersons similarly situated to [Applicant] are having their cases adjudicated within reasonable time frames." (ECF No. 26, at 25). She asserts that the delay in processing her application is prolonging the term of her supervised release.

As an initial matter, it is questionable whether this allegation is cognizable under § 2241.  Generally, courts addressing an alien's claim of undue delay in processing an asylum application have done so in the context of a petition for review of a Board of Immigration Appeals' (BIA) decision filed in the appropriate circuit court of appeals, *see e.g. Ramirez v. Holder*, No. 13-9610, 590 F. App'x 780, 787-88 (10th Cir. Nov. 18, 2014); a complaint seeking mandamus relief directing the immigration authorities to process the application, *see e.g. Rios v. Zigler*, 398 F.3d 1201, 1205-1207 and n. 2 (10th Cir. 2005); or, a claim to compel agency action under the Administrative Procedure Act, at 5 U.S.C. § § 706(1), *see e.g. Irshad v. Napolitano*, No. 8:12CV173,

2012 WL 4593391, at **6-7 (D.Neb. 2012).

However, even assuming that the equal protection allegations arising from the delay in processing Applicant's asylum application are actionable in this § 2241 proceeding, Applicant's conclusory assertion that "[p]ersons similarly situated to this applicant are having their cases adjudicated within reasonable time frames" (ECF No. 26, at 25) fails to state an arguable equal protection claim. *See Straley v. Utah Bd. of Pardons,* 582 F.3d 1208, 1215 (10th Cir. 2009) (rejecting bare equal protection claim that failed to identify an similarly-situated individual that was given more beneficial treatment); *see also Abdulhaseeb v. Calbone,* 600 F.3d 1301, 1323 (10th Cir. 2010) (holding "vague and conclusory allegations, without any specific facts" regarding differential treatment insufficient to support equal protection claim).

## IV.  Orders

For the reasons discussed above, it is

ORDERED that the Amended Application (ECF No. 26) filed by Applicant, Evelin Adela Peruch-Vincente, is DENIED and this action is DISMISSED WITH PREJUDICE, except that Applicant is not precluded from challenging the delay in processing her asylum application in a future proceeding.  It is

FURTHER ORDERED that the clerk of the court shall mail a copy of this Order to the Applicant, who is once again proceeding in this matter *pro se*, at the following address, identified in ECF No. 1, at 1:  2280 1st Ave., # 93, Greeley, Colorado, 80631.

Dated May 29, 2015, at Denver, Colorado.

BY THE COURT:

s/Lewis T. Babcock
LEWIS T. BABCOCK, Senior Judge
United States District Court